UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAROLYNN CAMPBELL,

     Plaintiff,

v.                                                                        Case No. 8:25-cv-02116-NHA

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff challenges the July 22, 2024 denial of her claim for Disability Insurance Benefits (DIB). She argues that three errors warrant reversal. First, Plaintiff argues that the Administrative Law Judge (ALJ) failed to acknowledge, accept, or explicitly discredit Plaintiff's alleged migraine symptoms. Doc. 12 pp. 3–7. Second, Plaintiff argues that the ALJ erred by failing to include migraine-related limitations in Plaintiff's residual functioning capacity (RFC), despite finding that Plaintiff's migraines constituted a severe impairment. Doc. 12 pp. 7–8. Third, Plaintiff argues in the alternative that the ALJ erred by failing to consider whether Plaintiff was at least entitled to a "closed period of disability," to account for a finite period in which Plaintiff's migraine symptoms were not effectively treated. Doc. 12 pp. 8–9.

After carefully reviewing the parties' briefs and the administrative record, I reverse and remand the case to allow the ALJ to clarify his conclusions regarding Plaintiff's migraine symptoms.

## I.   Background

Plaintiff is a 57-year-old woman with a high school education and work history as a clothing store manager and IT compliance analyst. R. 146, 207. On January 28, 2022, Plaintiff applied for DIB, alleging she became disabled on March 9, 2019. R. 146.  In her full DIB application, submitted on January 31, 2022, Plaintiff claimed she was disabled due to fibromyalgia, chronic fatigue syndrome, depression, anxiety, spinal stenosis, arthritis, and chronic migraines. R. 206.

### a.   Procedural History

The Social Security Administration first denied Plaintiff's application on November 18, 2022 (R. 91) and denied it again after reconsideration on January 22, 2024 (R. 97). On February 7, 2024, Plaintiff requested a hearing with an ALJ. R. 100. The ALJ held a hearing on July 9, 2024. R. 48. At the hearing, Plaintiff was represented by counsel. R. 48. Plaintiff and vocational expert William Harvey testified. R. 49, 64.

In the post-hearing decision issued on July 22, 2024, the ALJ concluded that Plaintiff was not disabled, because she could perform jobs that existed in significant numbers in the national economy. R. 29–41. Plaintiff requested a

review of the ALJ's decision from the Appeals Council, which it denied on May 29, 2025. R. 13.

Plaintiff then timely filed a complaint with this Court seeking reversal of the ALJ's decision. Doc. 1.[1] Plaintiff objects to the ALJ's treatment of her migraine symptoms, arguing that the ALJ (1) failed to properly evaluate her migraine symptoms; (2) erred in including no migraine-related restrictions in Plaintiff's residual functional capacity (RFC), despite finding that she had a severe impairment of migraine headaches; and (3) failed to consider a closed period of disability in light of her conclusion that Plaintiff's migraine symptoms improved part-way through her alleged period of disability. Doc. 12 p. 3.

The Commissioner has responded. Doc. 16. Plaintiff did not file a reply. The case is now ripe for review.

b.  Evidence Relating to Plaintiff's Migraines

In September 2020, endocrinologist Dr. Vindya Gunawardena noted that Plaintiff had been having "severe posterior headaches," and that she was planning to see a neurologist. R. 830.

Plaintiff was seen by neurologist Dr. John DiLullo in October 2020. R. 838. Plaintiff reported to Dr. DiLullo that she had suffered from headaches

---

[1] Plaintiff received an extension of time from the SSA, allowing her to commence a civil action challenging its decision on or before August 8, 2026. R. 2. This case was initiated on August 8. Doc. 1.

since her 20s, and that they would usually last between three and five days, with accompanying symptoms of nausea, throbbing pressure in her head, and light sensitivity. R. 838. At the time of the appointment, Plaintiff reported to Dr. DiLullo that she had been suffering from a continuous headache for 48 days, within which she experienced seven to eight episodes of what she described as migraines. R. 838. Dr. DiLullo concluded that Plaintiff suffered from "mixed headache with elements of migraine headache and muscle contraction tension headache." R. 839. He noted that Plaintiff was already taking a migraine medication called Topamax, which she reported was somewhat helpful. R. 839. Dr. DiLullo increased Plaintiff's Topamax dosage and prescribed her another medication called Nurtec. R. 839–40.

Plaintiff returned to Dr. DiLullo in November 2020, reporting that she was still suffering from the same headache and had experienced two more migraines since the prior visit. R. 849. Dr. DiLullo again increased her Topamax dose, but discontinued Nurtec, noting that it had been ineffective. R. 849. In February 2021, Plaintiff saw Dr. DiLullo again, reporting "nearly daily headache." R. 856.

In September 2021, Plaintiff saw a different neurologist, Dr. Daynet Hisley. R. 940. Dr. Hisley recorded Plaintiff's headache and migraine history as follows: "Headache–mixed headache, chronic tension (almost daily) and chronic complex migraines with auras and status migranous (frequency of

4

migraines for the last 6 months up 17-20 a month/average, lasting 4-24 hrs, sometimes up to 72 hrs). They can be debilitating and interfere with daily activities and job functions." R. 940. Dr. Hisley described Plaintiff's diagnosis as "chronic migraine without aura, intractable," and prescribed Botox for migraine treatment. R. 944.

In November 2021, Dr. Hisley administered Botox treatment to Plaintiff for the first time. R. 947. Dr. Hisley noted: "The patient tolerated the procedure well. Migraines have improved by at least 50% in frequency and severity with the Botox. This is the best preventive migraine treatment tried so far." R. 948. Plaintiff received Botox injections twice more in February 2022 and May 2022. R. 976, 1004. In the treatment notes for both appointments, Dr. Hisley made the identical note: "The patient tolerated the procedure well. Migraines have improved by at least 50% in frequency and severity with the Botox. This is the best preventive migraine treatment tried so far." R. 977, 1005.

In June 2022, Plaintiff reported eyelid drooping and muscle weakness to a different doctor (R. 1007), and in July 2022, Dr. Hisley put Plaintiff's Botox treatments on hold, ordering tests to investigate the cause of Plaintiff's facial muscle weakness (R. 1014). The next month, Dr. Hisley noted that the test results were unremarkable, but wrote that she would continue to hold off on treating Plaintiff with Botox because the injections may have caused Plaintiff's facial weakness. R. 1025.

Plaintiff complained of headaches to her primary care physician, Dr. Elaine Durcan, in December 2022.

At the 2024 hearing before the ALJ in 2024, Plaintiff stated that she had been receiving treatment for migraine headaches since at least 2021. R. 54. Plaintiff stated that the only treatment that had been especially effective was Botox, but she "still get[s] the migraines," and had stopped getting Botox injections because "they were thinking I had another disease." R. 54.

Plaintiff testified that, at some unspecified time, she had migraines "on average, about 28 days a month," but that, at the time of the hearing, she was "having a headache, probably, about half of the month." R. 55. Plaintiff stated that her migraines lasted "a few days," with "the first several days" being "just debilitating." R. 55. Plaintiff testified that her migraines caused light sensitivity, and that she was no longer receiving any treatment for them. R. 55. Plaintiff testified that when she got migraines she had to lay in a dark room and "ride it out." R. 55. On those days, Plaintiff testified, "as soon as I open my eyes in the morning my head feels like an anvil, and it will last for days." R. 55. When asked how many days out of the month she would be unable to engage in any activity due to migraines, Plaintiff stated, "Probably, 15." R. 55.

Later in the hearing, the ALJ asked the vocational expert ("VE") about a hypothetical claimant who could perform only light work and who had several additional limitations, but who had no need for absenteeism. R. 65. The VE

testified that such a person could work as a merchandise marker, sales attendant, and office helper. R. 65. The ALJ then asked if such a person could perform the jobs with two unexplained absences per month. R. 66. The VE testified that such a person would not be able to perform any jobs available in substantial numbers in the national economy. R. 66.

c. The ALJ's Decision

Pursuant to the five-step evaluation process for determining disability status (20 C.F.R. 416.920(a)), the ALJ found that that:

(1) Plaintiff had not engaged in substantial gainful activity between her alleged onset date of May 9, 2019 and the date she was last insured, March 31, 2022. R. 31.

(2) Plaintiff had the severe impairments of migraine, fibromyalgia, hypothyroidism, degenerative disc disease of the cervical spine with radiculopathy, bilateral trochanteric bursitis, carpal tunnel syndrome, anxiety disorder, and depressive disorder. R. 31.

(3) Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 32.

(4) Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b), with the additional limitations that she could only occasionally lift 20 pounds; could only occasionally climb ladders, ropes and scaffolds; could

7

understand, remember, carry out and perform only simple, routine tasks and instructions; and could not tolerate concentrated exposure to extreme cold or heat. R. 34. The ALJ did not include any limitations to Plaintiff's ability to regularly attend work or tolerate exposure to light.

(5) Plaintiff could perform jobs that existed in significant numbers in the national economy, specifically the jobs of marker, sales attendant, and office helper. R. 40–41.

Based on his finding that Plaintiff could perform jobs available in substantial numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. R. 41.

## II.    Standard of Review and Applicable Law

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 597 U.S. 97, 103

8

(2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ, even if the Court finds the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

### III.   Analysis

Although presented as three separate arguments, Plaintiff essentially brings a single objection to the ALJ's decision: that the ALJ failed to properly

9

consider, discuss, and incorporate evidence regarding the limitations imposed by her migraines. After review, I reverse and remand the case, to allow the ALJ to explain: (1) whether he considered all of the evidence relating to Plaintiff's migraine symptoms; (2) if so, on what basis he discounted some of the evidence; and (3) if he did not discount them, how he incorporated them into his RFC findings.

A claimant's RFC is "the most [the claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Social Security regulations require and ALJ to determine a claimant's RFC based on "all the relevant evidence in [the] case record." *Id.* In formulating the RFC, an ALJ may discredit a claimant's subjective complaints. *Moore*, 405 F.3d at 1212–13. However, the ALJ must articulate "explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("If [subjective] complaints are rejected, the reasons should be expressed.").

Here, the ALJ did not address Plaintiff's subjective complaints about her migraine symptoms in a way that enables this Court to determine whether he considered them all or, if so, on what basis he discounted them.

At the 2024 hearing, and during appointments with treatment providers throughout the period of alleged disability, Plaintiff reported migraine symptoms that included sensitivity to light and "debilitating" pain for fifteen

10

days each month. *See* R. 55, 838, 940, 1050. The ALJ listed migraines among Plaintiff's "severe impairments" (R. 31) but included little discussion of her reported symptoms. The ALJ mentioned Plaintiff's migraines three times in his RFC analysis.

> In the first passage addressing migraines, the ALJ states:

> The claimant also continued to report migraine pain and symptoms, but in September 2021, she demonstrated 5 out of 5 strength in all extremities (6F/26). December 2021 physical examination findings were entirely unremarkable (6F/14).

R. 36. The ALJ's citations reference Dr. Hisley's initial September 2021 appointment with Plaintiff, where Dr. Hisley noted Plaintiff's "Strength is 5/5 in all extremities," along with Plaintiff's "appropriate mood and affect," intact speech, and normal gait. *See* R. 593 (cited by the ALJ as 6F/26).[2] The ALJ also cites to treatment notes from a December 2021 appointment with Plaintiff's primary care doctor in which Plaintiff did not discuss her migraine symptoms and a physical exam uncovered nothing unusual. *See* R. 581 (cited by the ALJ as 6F/14). But the ALJ does not acknowledge that Dr. Hisley concluded on this same page of treatment notes that Plaintiff had "Chronic migraine without aura, intractable," (R. 593), nor does he acknowledge Dr. Hisley's description of Plaintiff's migraine history, found on an earlier page of the same treatment

---

[2] Identical treatment records appear multiple times in the record in different forms. The September 2021 treatment notes on page 593 of the record are the same notes as those on page 940, referenced in Section I of this Order.

11

notes, which included reference to up to 20 "debilitating" migraines a month, lasting up to 72 hours (R. 590). And, it is unclear how strength in Plaintiff's extremities relates to her migraine symptoms.

Second, the ALJ's RFC analysis mentions the treatment Plaintiff sought and received for migraine symptoms:

> The undersigned acknowledges that by this point [in January 2022], the claimant had been undergoing observation and treatment for migraines with a neurology specialist since approximately November 2020 (See 8F/39), and by May 2022, the claimant reported that Botox injections provided at least 50% in improvement with respect to migraine frequency and severity (8F/198).

R. 37. Two paragraphs later, after discussing other treatment records unrelated to migraines, the ALJ concludes: "at their worst, the claimant's symptoms did not reduce the claimant's level of functioning, based on examination findings, to a degree warranting a more restrictive residual functional capacity." R. 37. The ALJ thus appears to have concluded that Plaintiff's Botox treatments greatly reduced the need for migraine-related limitations in Plaintiff's RFC. This conclusion, standing alone, is supported by substantial evidence, namely Dr. Hisley's repeated treatment note that "Migraines have improved by at least 50% in frequency and severity with the Botox." *See* R. 948, 977, 1005. But the ALJ does not address the medical records showing that Plaintiff could no longer receive Botox treatments because of concerns about their side effects. *See* R. 1014, 1025. And the ALJ does not

acknowledge Plaintiff's contrary testimony that, despite the past success of the Botox treatments, Plaintiff was still experiencing "debilitating" migraine symptoms which sometimes prevented her from engaging in any productive activity. *See* R. 55–56. Thus, is not clear whether the ALJ reached his conclusion after considering all the relevant evidence and discounting contrary evidence, or whether he failed to consider the contrary evidence.

The ALJ makes a third and final reference to Plaintiff's migraines in the discussion of Plaintiff's mental limitations. Explaining his finding that Plaintiff could understand, remember, and carry out only simple instructions, the ALJ states that the limitation is necessitated by "claimant's preoccupation with her physical impairments, and treatment," identifying her "physical impairments" as "fibromyalgia and migraine headaches, in particular." R. 37–38. While this discussion may imply that the ALJ discounted Plaintiff's, reported symptoms of debilitating pain and sensitivity to light—instead suggesting that her preoccupation with her impairments is the real culprit—it does not expressly address or explain the ALJ's basis for discounting the reported symptoms.

In sum, while the ALJ did discuss Plaintiff's migraines in his RFC analysis, it is not clear whether he considered (or, if so, on what basis he discounted) Plaintiff's reported disabling symptoms. He does not discuss Plaintiff's reported light intolerance, despite Plaintiff's testimony and notes

13

from Plaintiff's neurologist, Dr. DiLullo, noting that she becomes very sensitive to light when experiencing migraines. *See* R. 55, 838. He does not discuss Plaintiff's testimony that migraines would prevent her from working fifteen days per month.[3] *See* R. 55.

To be sure, the ALJ's consideration of the evidence is entitled to deference from this Court, and it may not be reversed merely because the reviewing court may have reached a different result. *Bloodsworth*, 703 F.2d at 1239. The Court appreciates that the ALJ indeed may have good reasons for his conclusions. But because the decision does not sufficiently explain those reasons, the Court cannot determine whether the ALJ followed SSA regulations requiring full consideration of all relevant evidence, subjective and otherwise, in crafting an RFC. This warrants remand. Because the Court remands on that basis, it need not reach Plaintiff's alternative argument that the ALJ should have considered a limited period of disability ending May 2022.

---

[3] While discussing a residual functioning capacity assessment completed by Plaintiff's primary care physician, Dr. Turcan, the ALJ does address and reject Dr. Turcan's opinion that Plaintiff's impairments would cause her to be absent from work for more than four days per month. *See* R. 39, 1177. However, Dr. Turcan's opinion identified Plaintiff's diagnosis as "fibromyalgia," and nowhere mentions or discusses Plaintiff's migraine or headache symptoms (or lack thereof). *See* R. 1174–77. Thus, while the ALJ did consider and reject the idea that Plaintiff may require a limitation to account for absenteeism due to her fibromyalgia symptoms, he never discussed the evidence (that is, Plaintiff's own testimony) that her migraine symptoms specifically could cause absenteeism.

14

## IV.   <u>Conclusion</u>

For the reasons stated:

(1)   The decision of the Commissioner is REVERSED and REMANDED for additional proceedings consistent with this order; and

(2)   The Clerk of Court shall enter judgment in the Plaintiff's favor, terminate any pending motions, and close the case.

ORDERED on July 9, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

15